UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| CLINT A. HENDRICKSON, #259688 | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07-cv-304 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| PATRICIA CARUSO, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil action brought *pro se* by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff is an inmate at the Deerfield Correctional Facility (MSP) located in Ionia, Michigan. (docket # 22). Plaintiff alleges that defendants violated his statutory right to practice "Satanism" under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1(a). (docket # 1, ¶ IV). The three defendants named in plaintiff's complaint are: (1) Patricia Caruso, Director of the Michigan Department of Corrections; (2) Carmen Palmer, Warden of the Riverside Correctional Facility (RCF); and (3) Josh Stoley, RCF's Chaplain. Defendants are sued in their individual and official capacities. (*Id.*, ¶ III(C)). Plaintiff seeks monetary damages and an injunction compelling defendants "to recognize his religion, allow for meetings and services," and to allow plaintiff to possess unspecified "religious paraphernalia" and two books: "The Satanic Bible" and "The Book of Satanic Rituals." (*Id.*, ¶ V). The matter is now before me on defendants' motion for summary judgment. (docket # 17). On August 13, 2007, plaintiff filed his response to

the defendants' motion.  (docket # 21).   For the reasons set forth herein, I recommend that

defendants' motion for summary judgment be granted.

## Applicable Standards

Summary judgment is appropriate when the record reveals that there are no genuine

issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of

law.  FED. R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468

(6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The standard

for determining whether summary judgment is appropriate is "whether 'the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law.'"  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th

Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Tucker v.

Union of Needletrades Indus. & Textile Workers*, 407 F.3d 784, 787 (6th Cir. 2005).  The court must

consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable

inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th

Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary

judgment, that party bears the initial burden of pointing out to the district court an absence of

evidence to support the nonmoving party's case, but need not support its motion with affidavits or

other materials "negating" the opponent's claim.  *See Morris v. Oldham County Fiscal Court*, 201

F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).

Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). "A nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations. Instead, the nonmoving party must present evidence to defeat a properly supported motion for summary judgment. The party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or to refute the proof of the moving party in some material portion, and the opposing party may not merely recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).

Plaintiff did not file affidavits or other evidence in response to defendants' motion for summary judgment. Instead, plaintiff elected to rely on his verified complaint as his affidavit in opposition to defendants' motion. (Plaintiff's Brief, ¶ 1, docket # 21). Plaintiff's allegations against defendants consist of eight paragraphs. (docket #1 at 2-3, ¶¶ 1-8). Only those portions of plaintiff's verified complaint satisfying the requirements of Rule 56(e) of the Federal Rules of Civil Procedure

can be considered by the court in ruling on a summary judgment motion. *See Weberg v. Franks*, 229

F.3d 514, 526 n. 13 (6th Cir. 2000). "[I]t is well established that hearsay evidence cannot be

considered by a trial court ruling on a motion for summary judgment." *Tinsley v. General Motors*

*Corp.*, 227 F.3d 700, 703 (6th Cir. 2000); *see Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir.

2006). Legal conclusions, whether asserted by a party in an affidavit or verified complaint, do not

suffice to create a genuine issue of material fact for trial. *See Doe v. Magoffin County Fiscal Ct.*,

174 F. App'x 962, 966 (6th Cir. 2006); *accord Harrah's Ent., Inc. v. Ace Am. Ins. Co.*, 100 F. App'x

387, 394 (6th Cir. 2004).

## Facts

The following facts are beyond genuine issue. Plaintiff is a "Satanist." He states that

he has been an "adherent of the Satanic faith during the entire period of his incarceration."[1] (docket

# 1 at 3, ¶ (7)). Plaintiff's verified complaint states as follows with regard to defendant Stoley:

> 2.      That on January 9, 2007, Plaintiff submitted a written request to Defendant Stoley to change his religious preference to "Satanist," and to request permission to obtain his primary religious texts, "The Satanic Bible" and "The Book of Satanic Rituals."

> 3.      That on January 15, 2007, Defendant Stoley denied this request, stating that Satanism is not a religion recognized by the Michigan Dept. of Corrections (MDOC).

(*Id.* ¶ 2, 3).

---

[1] Plaintiff did not identify the date he began serving his current prison sentence. MDOC records indicate that on February 3, 2006, plaintiff was sentenced in Oakland County Circuit Court to two years and six months-to-fifteen years' imprisonment on his most recent felony conviction: assault with a dangerous weapon (felonious assault).

Satanism is indeed not recognized as a religion by the MDOC.  (docket # 18, Ex. 4,

Caruso Aff. ¶¶ 8-14).[2]  The procedure for seeking such recognition is explained in MDOC Policy

Directive  P.D. 05.03.150.  (Ex. 4A).  Instead of following these procedures, on January 23, 2007,

plaintiff filed a grievance against defendants Stoley  and Caruso (RCF-07-02-105-20a) requesting

"official recognition [of Satanism] and time for group services and books."  (Ex. 2).  The Step I

grievance response stated that Satanism was not recognized as a religion by the MDOC and advised

plaintiff of the steps necessary to request such recognition under the policy directive.  The Step I

response noted that plaintiff had not provided the information regarding his beliefs and practices

required by Policy Directive P.D. 05.03.150, ¶ M.  Plaintiff pursued a Step II appeal, to which

Warden Palmer gave this response:

> The Warden did inform the Grievant to kite the Chaplain[.] [I]t is the Chaplain[']s
> responsibility to process all requests for religious preference, not the Warden.  The Grievant
> states that the Chaplain informed him Satanism is not an MDOC[-]recognized faith.  The
> Grievant will need to seek approval from CFA Dave Burnett before Satanism would be
> considered an MDOC[-]recognized faith.  However, the Grievant is entitled to practice the
> faith of his choice privately in accordance with PD 05.03.150 while he is seeking approval
> from Dave Burnett.  The Grievant has in no way been denied his right to practice the faith
> of his choice.

(Ex. 2).  The Step I and II responses were upheld at Step III, and plaintiff's grievance was denied.

The Step III response noted that plaintiff had attempted to bypass the procedure specified in Policy

Directive P.D. 05.03.150 for obtaining obtain official recognition of Satanism when plaintiff

attempted to obtain such recognition through the grievance process.  (*Id.*).

On January 23, 2007, plaintiff filed a grievance against Librarian Wood and Director

Caruso.  (RCF-07-02-106-20c).  (Ex. 3).  Plaintiff's grievance indicated that on January 11, 2007,

---

[2]The exhibits cited herein are the defendants' exhibits in support of their motion for summary
judgment.  (docket # 18).

plaintiff "sent a kite [informal complaint] to RCF Librarian E. Wood asking if 'The Satanic Bible'

and 'The Book of Satanic Rituals' [were] on the MDOC Restricted Publications List."  The librarian

instructed plaintiff to obtain a library call-out and check for himself.  Plaintiff's grievance stated that

he had been classified as a member of a security threat group ("STG-I"), and was therefore "barred

from going to the Library."  (Ex. 3).  The Step I grievance response stated that plaintiff could obtain

up to six hours of library time under Policy Directive P.D. 04.04.113, but it was the prisoner's

responsibility to make the request.  The Step I response advised plaintiff that "The Satanic Bible"

and "The Book of Satanic Rituals" were on the MDOC's restricted publication list and had been on

the list since 1999.  Among other things, the author of these books advocates blood sacrifice,

including human sacrifice.  He makes scurrilous attacks on religious groups, creating a danger of

assaults and other forms of prison disturbances.  He encourages self-indulgence rather than self-

control.  He states that Satanist rituals are to be performed at night, in the dark, outside the presence

of non-Satanists -- all of which are fundamentally incompatible with plaintiff's status as a prisoner

in state custody serving a sentence on a felony conviction.  (Ex. 8, Burnett Aff., ¶¶ 8-10).

Plaintiff pursued a Step II appeal, to which he received this response:

**Summary of the Reason for Appeal**

Grievant states the material he seeks should be removed from the restricted publications list
so he can use them to practice his religious beliefs.

**Summary of Step II Investigation**

Grievant was STG 1 status at the time in question.  Grievance has since renounced and has
been removed from the STG status as of 2-2-07.  Per PD 04.04.113 section X number 4
states the library is one of the approved leisure time activities for prisoners on STG 1 status.
Grievant seeks to review the [S]atinic [B]ible and [S]atanic [R]ituals[.]  [B]oth books are
currently on the restricted publication list and have been since 1999.  This list is established
through CFA and the facility has no control of this list.

**Conclusion**

Based on the above, your grievance is considered Denied at Step II.

(Ex. 3).  The denial of plaintiff's grievance was upheld at Step III.  (*Id.*).  On March 23, 2007, plaintiff filed this lawsuit.

**Discussion**

1.      **Defendant Palmer**

Plaintiff did not file any grievance against defendant Palmer corresponding to the claims he is attempting to assert against defendant Palmer.  Warden Palmer has asserted the affirmative defense of lack of proper exhaustion of administrative remedies required by 42 U.S.C. § 1997e(a) and has supported the defense with evidence.  *See Jones v. Bock*, 127 S. Ct. 910, 921 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378 (2006).  Plaintiff has produced no evidence of a grievance against Palmer.  Plaintiff's only response is to argue that it would have been "futile" to have filed a grievance against defendant Palmer, because such a grievance would have been rejected as duplicative if it had been filed.  Plaintiff's assertions of futility do not excuse plaintiff from the exhaustion requirement.  *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999)("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Jones v. Douglas*, 108 F. App'x 254, 256 (6th Cir. 2004)(quoting *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001)("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").  I find that plaintiff

did not properly exhaust any claim against defendant Palmer, and she is entitled to dismissal of all claims against her for failure to exhaust administrative remedies.

### 2.       Qualified Immunity

Plaintiff's complaint requests an award of monetary damages against defendants in their individual capacities.[3]   (docket # 1, ¶ III(C)).  Defendants' motion for summary judgment requests entry of  judgment in defendants' favor on qualified immunity and other grounds.  "The purpose of the qualified immunity defense is to protect public officials from undue interference with their duties and from potentially disabling threats of liability."  *Perez v. Oakland County*, 466 F. 3d 416, 426 (6th Cir. 2006); *see Vakilan v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003).  When a defendant raises the defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity.  *See Haynes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007); *Baker v. City of Hamilton*, 471 F.3d 601, 605 (6th Cir. 2006); *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "govern-ment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.* at 818; *see Hudson v. Hudson*, 475 F.3d 741, 744  (6th Cir. 2007).  The question whether qualified immunity attaches to an official's actions is

---

[3]It is doubtful that plaintiff can seek damages in this case.  The Eleventh Circuit recently held that "section 3 of RLUIPA -- a provision that derives from Congress' Spending Power -- cannot be construed as creating a private action against individual defendants for monetary damages."  *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007).  The ruling on qualified immunity, however, makes it unnecessary to address this unsettled question.

a purely legal issue for the court. *See Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007); *Swiecicki v. Delgado*, 463 F.3d 489, 497 (6th Cir. 2006); *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), emphasized that the defense of qualified immunity must be addressed in proper sequence. The initial inquiry must be whether the plaintiff has alleged and supported with evidence[4] facts showing that the defendants' conduct violated a constitutional or statutory right. *Saucier*, 533 U.S. at 201; *see Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007); *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007); *Silberstein v. City of Dayton*, 440 F.3d at 311; *see also Armstrong v. City of Melvindale*, 432 F.3d 695, 699 (6th Cir. 2006) ("Whether a constitutional violation occurred is a threshold issue: if the officers' conduct violated no constitutionally protected right, there is no need for further analysis."); *accord Caudill v. Hollan*, 431 F.3d 900, 908 n. 5 (6th Cir. 2005) ("[D]istrict courts . . . may not assume a constitutional violation or skip to qualified immunity, even when qualified immunity analysis seems conclusive.").

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--

---

[4]A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. *See Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 62 (1st Cir. 2004). At the summary judgment stage, a plaintiff may not rely on his pleadings. Rather, the issue is whether "the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004).

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C.A. § 2000cc-1(a).  "The threshold inquiry under RLUIPA is whether the challenged governmental action substantially burdens the exercise of religion.  The burden of proving the existence of a substantial burden rests on the religious adherent." *Baranowski v. Hart*, 486 F.3d 112, 124 (5th Cir. 2007); *see Living Water Church of God v. Charter Twp. of Meridian*, Nos. 05-2309, 06-1210, __ F. 3d __, 2007 WL 4322157, at * 4 (6th Cir. Dec. 10, 2007); *see also Dunlap v. Losey*, 40 F. App'x 41, 43 (6th Cir. 2002) ("RLUIPA . . . requires the complainant to show that his religious exercise was substantially burdened.").  RLUIPA does not define the phrase "substantial burden," and the Supreme Court "has not yet defined 'substantial burden' as it applies to RLUIPA." *Living Water*, 2007 WL 4322157, at * 5.  In *Living Water*, the Sixth Circuit declined to establish a "bright line test" for determining a "substantial burden." *Id.* at 8.  It held that the Supreme Court's Free Exercise jurisprudence provides the appropriate analytical framework. *Id.* at 12.  The Sixth Circuit emphasized that in the Free Exercise context, the Supreme Court has made clear that the "substantial burden' hurdle is high." *Id.* at 5.  "[A] 'substantial burden' is a difficult threshold to cross." *Id.* at 7.  "'[A] substantial burden must place more than an inconvenience on religious exercise.'" *Id.* at 10 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)).  A substantial burden is not established because the government's action makes the religious exercise more difficult or expensive. *Living Water*, 2007 WL 4322157, at * 10.

Plaintiff did not present evidence that he lacked alternative means to practice Satanism as his religion.  Plaintiff states in paragraph 7 of his complaint that he "suffered tangible harm, damage and loss from the deprivation of religious meetings, services, religious paraphernalia,

and religious texts," but his recitation of these conclusions does not provide any facts on which a finding of a "substantial burden" could be based.[5]  Accommodation of the rights plaintiff claims would increase the risk of prison violence.  Plaintiff has not offered any alternative that would fully accommodate his asserted rights at a *de minimis* cost to the legitimate state interests that gave rise to the restrictions.  Plaintiff has not presented evidence that the absence of official MDOC recognition or the exclusion of the two books in question placed a substantial burden on the exercise of his religion.

Furthermore, even if plaintiff had presented evidence showing a "substantial burden" on his religious exercise, defendants have presented evidence establishing that the actions taken were the least restrictive means of furthering compelling governmental interests.  The Supreme Court's *Cutter v. Wilkinson* decision provided guidance to lower courts regarding the application of RLUIPA's statutory standards:

> We do not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety.  Our decisions indicate that an accommodation must be measured so that it does not override other significant interests.  In *[Estate of Thornton v.] Caldor, [Inc.*, 472 U.S. 703 (1985)]*, the Court struck down a Connecticut law that "arm[ed] Sabbath observers with an absolute and unqualified right not to work on whatever day they designate[d] as their Sabbath." 472 U.S., at 709, 105 S. Ct. 2914.  We held the law invalid under the Establishment Clause because it "unyielding[ly] weigh[ted]" the interests of Sabbatarians "over all other interests." *Id*., at 710, 105 S. Ct. 2914.
>
> We have no cause to believe that RLUIPA would not be applied in an appropriately balanced way, with particular sensitivity to security concerns. While the Act adopts a "compelling

---

[5] There is no need for an extended discussion of plaintiff's claims for relief against defendants in their official capacities.  Defendants Palmer and Stoley lacked authority to establish MDOC recognition of Satanism as a religion and could not allow plaintiff to possess books on the MDOC's restricted publications list.  Director Caruso has the requisite authority (*see* Caruso Aff., ¶ 7), but there is no underlying RLUIPA violation supporting relief against defendant Caruso in her official capacity.

governmental interest" standard, *see supra*, at 2118, "[c]ontext matters" in the application of that standard. *See Grutter v. Bollinger*, 539 U.S. 306, 327, 123 S. Ct. 2325, 156 L.Ed.2d 304 (2003). Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. *See, e.g.*, 139 Cong. Rec. 26190 (1993) (remarks of Sen. Hatch). They anticipated that courts would apply the Act's standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."

544 U.S. at 722-23. "[P]rison security is a compelling state interest, and that deference is due to institutional officials' expertise in this area." *Id.* at 725 n.13; *see Hoevenaar v. Lazaroff*, 422 F.3d 366, 370 (6th Cir. 2005) ("In conducting an analysis of whether the regulation in issue was the least restrictive means of furthering the government's compelling security interest, the district court did just what the Supreme Court and Congress have warned against: substituting its judgment in place of the experience and expertise of prison officials.").

"Pursuant to MDOC PD 05.03.150, group religious services and activities are offered only for religious groups recognized by the Department." (Ex. 4, Caruso Aff. ¶ 9). Plaintiff's desire for official recognition of his particular group does not suffice to obtain recognition under this policy directive. (Ex. 4-A, ¶¶ K-N). Plaintiff did not complete the process detailed in the policy directive for obtaining official MDOC recognition. The policy is the least restrictive means of accommodating the religious beliefs of prisoners while at the same time dealing with the serious and substantial problem of prisoners attempting to manipulate the system in efforts to obtain special privileges or conduct gang-related activities under the guise of religious exercise. *See e.g., Cutter v. Wilkinson*, 544 U.S. at 723 n. 11 (2005)("Courts . . . may be expected to recognize the government's countervailing compelling interest in not facilitating inflammatory racist activity that could imperil prison security and order."). The findings of one district court regarding the "Satanic

Bible" suffice to illustrate how the exclusion of the two books by this author is the least restrictive

means of serving the compelling state interests of prison safety, security, and prisoner rehabilitation:

> Large portions of The Satanic Bible have great potential for fomenting trouble of all kinds in a prison setting, leading to difficulty in maintaining security and order and in delivering rehabilitative services in the prisons. In addition, much of the publication advocates preying on the weak in any way possible for one's own gratification-clearly an extremely dangerous "teaching" in any setting, but especially in a prison where the weak have fewer avoidance strategies at their disposal. A few examples of isolated quotations will suffice to illustrate the point. The Satanic Bible states:

>> Hate your enemies with a whole heart, and if a man smite you on one cheek, SMASH him on the other!; smite him hip and thigh, for self-preservation is the highest law! (p. 33, emphasis in original).

>> Give blow for blow, scorn for scorn, doom for doom-with compound interest liberally added thereunto! Eye for eye, tooth for tooth, aye four-fold, a hundred-fold! Make yourself a Terror to your adversary, and when he goeth his way, he will possess much additional wisdom to ruminate over. Thus shall you make yourself respected in all the walks of life, and your spirit-your immortal spirit-shall live, not in an intangible paradise, but in the brains and sinews of those whose respect you have gained. (p. 33, italics in original).

>> The seven deadly sins of the Christian Church are: greed, pride, envy, anger, gluttony, lust, and sloth. Satanism advocates indulging in each of these "sins" as they all lead to physical, mental, or emotional gratification. (p. 46).

>> Satanism encourages its followers to indulge in their natural desires. Only by so doing can you be a completely satisfied person with no frustrations which can be harmful to yourself and others around you. Therefore, the most simplified description of the Satanic belief is: INDULGENCE INSTEAD OF ABSTINENCE[.] (p. 81, emphasis in original).

>> The only time a Satanist would perform a human sacrifice would be if it were to serve a two-fold purpose; that being to release the magician's wrath in the throwing of a curse, and more important, to dispose of a totally obnoxious and deserving individual.... The question arises, "Who, then, would be considered a fit and proper human sacrifice, and how is one qualified to pass judgment on such a person?" The answer is brutally simple. Anyone who has unjustly wronged you-one who has "gone out of his way" to hurt you-to deliberately cause trouble and hardship for you or those dear to you. In short, a person asking to be cursed by their very actions. (pp. 88-89).

> Intense sexual feeling should accompany this step of the [sexual] ritual, and after sufficient imagery is obtained, as strong an orgasm as is possible should serve as climax to this step.  This climax should be attained using any masturbatory or auto-erotic means necessary.  (p. 132).

> Intense, calculated hatred and disdain should accompany this step of the [destruction] ceremony, and no attempt should be made to stop this step until the expended energy results in a state of relative exhaustion on the part of the magician.  (p. 134).

These representative quotes illustrate the potential for disruption in a prison setting if an inmate who was a practicing Satanist took these "teachings" to heart.  There is nothing in The Satanic Bible to suggest that these directives are not to be taken literally and it requires little imagination to project the probable result of espousing the philosophy promulgated in this publication.

*Carpenter v. Wilkinson*,  946 F. Supp. 522, 529-30 (N.D. Ohio 1996); *see McCorkle v. Johnson*, 881 F.2d 993, 995-96 (11th Cir. 1989); *accord Burton v. Frank*, No. 03-C-374-C, 2004 WL 1176171, at * 4-6 (W.D. Wis. May 20, 2004); *Doty v. Lewis*, 995 F. Supp 1081 (D. Ariz. 1998).

Assuming *arguendo* that plaintiff had been able to satisfy the initial requirement under *Saucier*, he would nonetheless fall short of showing that the right or rights he claims each defendant violated was "clearly established" such that a reasonable official in the defendant's position, at the time the act was committed, would have understood that his or her behavior violated that right.  533 U.S. at 201.  The Supreme Court's decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004), examined the underlying purpose of the requiring that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . .  Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.  If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198.  The Supreme Court and the Sixth Circuit have emphasized that the second inquiry

"'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"

*Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201); *see Silberstein*, 440 F.3d

at 316.  "'[T]he right the official is alleged to have violated must have been 'clearly established' in

a more particularized, and hence more relevant sense.'"  *Lyons v. City of Xenia*, 417 F.3d 565, 572

(6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 199); s*ee Perez*, 466 F.3d at 428 ("Because most legal

rights are clearly established at some level of generality, immunity would be impossible to obtain

if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly

violated.'").  "The contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640

(1987); *see Rippy v. Hattaway*, 270 F.3d 416, 424 (6th Cir. 2001).  "Thus, '[t]he relevant, dispositive

inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the

situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*,

533 U.S. at 201); *see Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003); *Risbridger v. Connelly*,

275 F.3d 565, 569 (6th Cir. 2002).  Although it is not always necessary to find a case where identical

conduct had previously been determined to be unconstitutional,[6] in light of preexisting law, the

unlawfulness must be apparent.  *See Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Feathers v. Aey*,

319 F.3d 843, 848 (6th Cir. 2003); *Risbridger*, 273 F.3d at 569.  "Ordinarily, a Supreme Court or

Sixth Circuit decision on point is necessary."  *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th

Cir. 2007); *see Jackson v. Schultz*, 429 F.3d 586, 592 (6th Cir. 2005).  The court must focus on

---

[6]"Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law."  *Brosseau*, 543 U.S. at 199; *Lyons*, 417 F.3d at 572.

whether, at the time the defendant acted, the right asserted was "clearly established" by the decisions

of the Supreme Court or the Sixth Circuit.  *See Reynolds v. City of Anchorage*, 379 F.3d 358, 367

(6th Cir. 2004); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002).

"'[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the

law.'" *Armstrong*, 432 F.3d at 699 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "Thus,

officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'"

*Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229

(1991)); *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) ("Qualified immunity leaves

government authorities 'ample room for mistaken judgments.'") (quoting *Scott v. Clay County*, 205

F.3d 867, 873 n. 9 (6th Cir. 2000)).  "If reasonable officials could disagree on the issue, immunity

should be recognized."  *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999).  "For qualified

immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or

allow to raise a question about), the conclusion for every like-situated, reasonable government agent

that what the defendant is doing violates federal law in the circumstances."  *Saylor v. Board of

Educ.*, 118 F.3d 507, 514 (6th Cir. 1997); *see Gragg*, 289 F.3d at 964.  "The burden of convincing

a court that the law was clearly established 'rests squarely with the plaintiff.'"  *Key*, 179 F.3d at 1000

(quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Perez*, 466 F.3d at 427; *accord

See v. City of Elyria*, 502 F.3d 484, 491 (6th Cir. 2007)("The plaintiff carries the burden of proof to

show that the defendant is not entitled to qualified immunity.").

Plaintiff did not address his burden under the second prong of the qualified immunity

analysis.  He may have been attempting to rely on paragraph 8 of his complaint which states as

follows:

8.      That Plaintiff pleads in avoidance of qualified immunity by referring to the Magistrate's Report of July 11, 2006, in *Marsh v. Granholm, et al.*, USDC W[D] Mich[.] No. 2:05-cv-134 (adopted 8/22/06).[7]

Plaintiff cites no authority in support of his apparent proposition that a magistrate judge's report and recommendation, which a district judge always remains free to reject, can "clearly establish" the law for qualified immunity purposes.  It is patent that this particular report and recommendation did not "clearly establish" the rights plaintiff now claims.  Among other things, the magistrate judge found that the Wiccan prisoner serving a mandatory life sentence for murder did not have a right to possess a dagger, to engage in private heterosexual procreation, or to worship privately outdoors.  The magistrate judge recommended that the defendants' motion for summary judgment on the basis of qualified immunity be granted because the prisoner's statutory rights under RLUIPA were not clearly

---

[7]Plaintiff may have deliberately abandoned his claims for damages against defendants in their individual capacities.  Plaintiff's brief emphasizes that plaintiff is seeking monetary damages against defendants in their official capacities, and argues in cursory fashion that Congress abrogated the State of Michigan's immunity on official capacity claims for monetary damages when it enacted RLUIPA. (docket #21, ¶ 6).  Because plaintiff has not shown a substantial burden as required by statute, he has no basis for relief, regardless of the defendants' capacities or the form of relief he is seeking.  It is, however, worthy to note that the majority of courts that have addressed the issue have held that Congress did not abrogate the States' immunity from monetary damage claims when it enacted RLUIPA.  *See Madison v. Virginia*, 474 F.3d 118, 131 (4th Cir. 2006)("We conclude that RLUIPA's 'appropriate relief against a government' falls short of the unequivocal textual expression necessary to waive State immunity from suits for damages.  The Statute makes no reference to monetary relief -- or even to Sovereign immunity generally."); *see also Scott v. Beard*, No. 06-4439, 2007 WL 3194039, at * 1 (3d Cir. Oct. 30, 2007); *accord Webman v. Federal Bureau of Prisons*, 441 F.3d 1022, 1025-26 (D.C. Cir. 2006)(holding that an identical "appropriate relief" provision in the Religious Freedom Restoration Act was insufficient to waive federal Sovereign immunity for damage suits); *Cf Smith v. Allen*, 502 F.3d at 1271 (permitting an official capacity action for damages, but emphasizing that "a *prisoner plaintiff's* right to monetary relief is severely circumscribed by the terms of the Prison Litigation Reform Act ('PLRA'), 42 U.S.C. § 1997e" because the PLRA provides that a prisoner may not bring a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury")(emphasis in original).  Plaintiff did not present any evidence of physical injury, thus even under the minority view, defendants would be entitled to judgment in their favor under 42 U.S.C. § 1997e(e) on plaintiff's claims for damages against defendants in their official capacities.

established.   On August 22, 2006, Chief Judge Bell entered an order adopting the report and

recommendation and granting defendants' motion for summary judgment because defendants were

entitled to qualified immunity on all plaintiff's claims for monetary damages under RLUIPA.[8]

The Sixth Circuit has never held that a prisoner has a statutory cause of action for

monetary damages under RLUIPA.  RLUIPA creates a private cause of action for a prison inmate

if section 3 is violated, and further provides that the complaining party, if successful, may "obtain

appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).  The Eleventh Circuit recently

observed, "To put it mildly, there is a division of authority on th[e] question [of whether RLUIPA

authorizes an award of monetary damages]."  *Smith v. Allen*, 502 F.3d at 1270 (collecting cases).

Assuming *arguendo* that RLUIPA authorizes a cause of action for damages, qualified immunity is

undoubtedly an appropriate defense.  *See Haley v. Donovan*, No. 06-55856, 2007 WL 2827478, at

* 1 (9th Cir. Sept. 27, 2007); *Ahmad v. Furlong*, 435 F.3d 1196, 1203 (10th Cir. 2006).  Plaintiff has

not addressed much less demonstrated how defendants' actions violated any "clearly established"

rights under RLUIPA.  Plaintiff has not identified any authority that clearly established his right to

official MDOC recognition of Satanism as a religion, and every court that has considered Anton

LaVey's books on Satanism has determined that they are fundamentally incompatible with prison

safety, security, and prisoner rehabilitation.  Accordingly, I find that defendants are entitled to

---

[8] Plaintiff requests that the court "hold a decision in this case in abeyance until some of the same questions herein are decided in the matter of *Marsh v. Granholm*." (docket # 21 at 2-3). There is no need or basis for delay.  An August 21, 2007 report and recommendation in *Marsh* recommended that defendants' motion for summary judgment be granted on all the plaintiff's remaining claims.  On September 7, 2007 Chief Judge Bell overruled the plaintiff's objections, adopted the report and recommendation, and entered a final judgment in favor of the defendants.

summary judgment on plaintiff's claims for monetary damages on the alternative basis of qualified

immunity.

### Recommended Disposition

For the foregoing reasons, I recommend that plaintiff's claims against defendant

Palmer be dismissed for lack of exhaustion and that the other defendants' motion for summary

judgment (docket # 17) be granted.

Dated:   February 1, 2008                /s/  Joseph G. Scoville
                                        United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).